UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



FILED by _____ D.C.

NOV 06 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT
S. D. of FLA. – MIAMI

| | |
|---|---|
| **GLOBAL USA LLC, a Nevada** | **Civil Division** |
| **Limited Liability Company.** | |
| **Plaintiff,** | |
| | |
| **v.** | Case No. **09-81723** |
| **UNITED AIR LINES, INC.,** | |
| **A Delaware Corporation.** | **CIV-RYSKAMP** |
| **Defendant.** | |
| | MAGISTRATE JUDGE |
| | VITUNAC |

## COMPLAINT

**NOW COMES** the Plaintiff, **Global USA LLC,** by counsel, and files this its Complaint for damages for breach of contract against Defendant **United Air Lines, Inc**. In support hereof, the Plaintiff states as follows:

### PARTIES AND JURISDICTION

1.  Plaintiff **Global USA LLC (hereinafter "Global")** is a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business located in West Palm Beach, Florida.

2.  Defendant **United Air Lines, Inc. (hereinafter "United")** is a Delaware corporation organized and existing under the laws of the state of Delaware with its principal offices at Chicago, Illinois.

3.  The Plaintiff and United are parties to that certain Purchase and Sale Agreement (MSN 24717) dated October 15, 2008, more particularly described below.

4.   This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. section 1332(a) as the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney's fees and there exists complete diversity between all parties.

5.   This Court has personal jurisdiction over the Defendant  United as the Defendant has engaged in significant business in this state, maintains offices in this state and district, and has breached the Agreement by failing to perform acts required to be performed in this state.

6.   Venue is appropriate in this Court pursuant to 28 U.S.C. section 1391(a) since a substantial part of the events and omissions giving rise to the Plaintiff's claims occurred in this District.

## BACKGROUND

7.   The Plaintiff Global is a company engaged in the aviation business from its offices in South Florida.

8.   Defendant United is one of the country's largest commercial airlines engaged in the transport of passengers and cargo by air.

9.   In Fall 2008, United and Plaintiff had discussions concerning the sale and purchase of four Boeing B737-322 aircraft.

10.   As a result, on or about October 15, 2008, Plaintiff and United entered into a Purchase and Sale Agreement (MSN 24673) for the contemplated sale of that certain Boeing B737-322  aircraft  bearing MSN 24673 and FAA Registration N398UA, together with installed Engines ("Aircraft N398UA").

11.   In addition, on or about October 15, 2008, Plaintiff and United also entered into that certain Purchase and Sale Agreement (MSN 24717)  for the contemplated sale of that certain Boeing B737-322 aircraft bearing MSN 24717, and FAA Registration No. N202UA together with installed Engines ("Aircraft N202UA"). The Purchase and Sale Agreement for the sale of Aircraft N202UA ("N202UA Agreement") is attached hereto as "Exhibit A" and incorporated for all purposes.

12. The Plaintiff placed refundable deposits of USD $550,000.00 ("Deposit") with United as a deposit toward the possible acquisition of the respective Aircraft, subject to inspection and other conditions precedent to closing.

13. The Deposits were refundable to Plaintiff if Plaintiff ultimately rejected the Aircraft, as provided in each agreement.

14. Both of the agreements provided that as a condition to Closing, Plaintiff would inspect each Aircraft.

15. After inspection, Plaintiff accepted the Aircraft N398UA on November 7, 2008, and the sale ultimately closed.

16. After inspection, Plaintiff rejected the Aircraft N202UA. See Exhibit B.

17. The N202UA Agreement required United to return the Deposit to Plaintiff upon a rejection of Aircraft N202UA.

18. Despite demand, United has failed and refused to return the $550,000.00 Deposit to Plaintiff as required under the N202UA Agreement.

19. Plaintiff has been damaged in an amount not less than USD $550,000.00.

20. Plaintiff has performed all of its obligations under the terms and conditions of the N202UA Agreement and is not in breach thereof.

## CAUSES OF ACTION -

### Count I: Breach of Contract

21. Plaintiff restates and incorporates the allegations of paragraphs 1 though 20 as if set forth fully herein.

22. The Plaintiff and United entered into the N202UA Agreement and Plaintiff placed a $550,000.00 refundable deposit ("Deposit") with United.

23. The N202UA Agreement provided Plaintiff with the right to inspect the Aircraft and records prior to Closing. The inspection included physical and visual inspection of the airframe and a borescope inspection of the Engines, at buyer's option.

24. Plaintiff did inspect the Aircraft N202UA.

25. On November 21, 2008, the Plaintiff rejected the Aircraft. **See** Exhibit B, incorporated herein.

3

26.   Unlike Aircraft N398UA, Aircraft N202UA was <u>not</u> in the condition required for Closing and Plaintiff was entitled to reject the Aircraft.

27.   Further, Plaintiff was not obligated to purchase the Aircraft N202UA because Buyer's conditions precedent under Section 6.3 of the N202UA Agreement were not met.

28.   Despite demand, United has failed to return the Deposit to Plaintiff as required by the N202UA Agreement.

29.   The amount due Plaintiff totals not less than USD $550,000.00.

30.   United has breached the N202UA Agreement by its failure to repay the Deposit to Plaintiff.

31.   Plaintiff has been damaged by the breach of the N202UA Agreement in an amount not less than USD $550,000.00.

32.   Plaintiff has complied with all of its obligations under the N202UA Agreement.

33.   Plaintiff has retained the undersigned counsel to pursue and protect its interests in this matter, and is obligated to pay counsel a reasonable fee for services rendered.

*[Remainder of Page Left Blank Intentionally]*

**WHEREFORE**, Plaintiff Global USA LLC demands judgment against Defendant United Air Lines, Inc., for damages of not less than USD Five Hundred  and Fifty Thousand Dollars ($550,000.00) caused by Defendant's breach of the N202UA Agreement, for the recovery of its costs, pre-judgment and post-judgment interest and for such other and further relief as the Court may deem just and proper in the circumstances.

*Plaintiff requests trial by jury of all issues so triable.*

Respectfully submitted,

Ronald T. Bevans, Jr.
Law Offices of Ronald T. Bevans, Jr., P.A
1221 Brickell Avenue  Suite 2660
Miami, Florida 33131-3259
Tele 305 374-7535  Fax  305 374-9869
rtbevans@bevanslaw.com
Florida Bar No. 916810

**Counsel for Plaintiff Global USA LLC**

## <u>EXHIBITS TO COMPLAINT</u>

A)  Purchase and Sale Agreement (MSN 24717), dated October 15, 2008.

B)  Notice of Rejection, dated November 21, 2009.

**EXHIBIT A**

**EXECUTION VERSION**

# PURCHASE AND SALE AGREEMENT
# (MSN 24717)

dated as of October 15, 2008

**UNITED AIR LINES, INC.**
as Seller

and

**GLOBAL USA LLC**
as Buyer

Relating to the Purchase of
One (1) used Boeing model 737-322 Aircraft

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| ARTICLE 1. | DEFINITIONS | 1 |
| ARTICLE 2. | SALE AND PURCHASE | 5 |
| ARTICLE 3. | PURCHASE PRICE | 5 |
| ARTICLE 4. | PAYMENTS | 6 |
| ARTICLE 5. | INSPECTION, DELIVERY AND ACCEPTANCE | 6 |
| ARTICLE 6. | CONDITIONS PRECEDENT | 8 |
| ARTICLE 7. | REPRESENTATIONS AND WARRANTIES | 10 |
| ARTICLE 8. | CONDITION OF AIRCRAFT | 12 |
| ARTICLE 9. | INTENTIONALLY OMITTED | 13 |
| ARTICLE 10. | INSURANCES | 13 |
| ARTICLE 11. | INDEMNITIES | 14 |
| ARTICLE 12. | FURTHER ASSURANCE | 15 |
| ARTICLE 13. | TERMINATION | 15 |
| ARTICLE 14. | EXCUSABLE DELAY | 16 |
| ARTICLE 15. | ASSIGNMENT | 16 |
| ARTICLE 16. | CONFIDENTIALITY | 16 |
| ARTICLE 17. | MISCELLANEOUS | 17 |
| ARTICLE 18. | NOTICES | 17 |
| ARTICLE 19. | LAW AND JURISDICTION | 18 |
| ARTICLE 20. | BROKER FEES | 19 |
| ARTICLE 21. | COSTS AND EXPENSES | 19 |
| ARTICLE 22. | COUNTERPARTS | 19 |

| | |
|---|---|
| Schedule 1 | Description of Aircraft |
| Schedule 2 | Form of Bill of Sale |
| Schedule 3 | Form of Technical Acceptance Certificate |
| Schedule 4 | Form of Acceptance Certificate |
| Schedule 5 | Delivery Condition of the Aircraft and Inspection |
| Schedule 6 | List of Manuals and Technical Records |

i

## PURCHASE AND SALE AGREEMENT (MSN 24717)

**THIS PURCHASE AND SALE AGREEMENT (MSN 24717)** dated as of October 15, 2008 (this "**Agreement**") and made BETWEEN:

(1)   **UNITED AIR LINES, INC.**, a Delaware corporation, having its headquarters at 77 West Wacker Drive, Chicago IL 60601, U.S.A. (the "**Seller**"); and

(2)   **GLOBAL USA LLC**, a limited liability company organized under the laws of the State of Nevada and having its headquarters at 222 Lakeview Avenue, West Palm Beach, FL 33401 (the "**Buyer**").

**WHEREAS**, the Seller and the Buyer desire to effect, in accordance with the terms hereof, the transfer by the Seller to the Buyer of all of Seller's rights, title and interest in, under and with respect to the Aircraft.

**NOW, THEREFORE**, in consideration of the forgoing premises and mutual covenants and agreements of the parties contained herein, the parties hereto agree as follows:

## ARTICLE 1.

## DEFINITIONS

**Section 1.1**   In this Agreement, unless the context otherwise requires, the following terms have the meanings set forth herein:

"**Acceptance Certificate**" means an acceptance certificate in substantially the form of Schedule 4 executed and delivered by the Buyer to the Seller pursuant to Articles 5.3 and 5.6 relating to the Aircraft;

"**Aircraft**" means the used Boeing 737-322 aircraft bearing the manufacturer serial number as more particularly described in Schedule 1, with two (2) used CFM International, Inc. CFM56-3C-1 engines as more particularly described in Schedule 1, one (1) used Garrett model 62T auxiliary power unit, together with all appliances, parts, accessories, and other equipment installed on, or attached thereto.  When the context permits, references to the Aircraft shall include the Manuals and Technical Records relating to the Aircraft;

"**Bill of Sale**" means the bill of sale to be issued by the Seller to the Buyer, in the form as set forth in Schedule 2, relating to the Aircraft and which will be effective at the Delivery of the Aircraft;

"**Business Day**" means a day (other than a Saturday, Sunday or holiday scheduled by law) on which banks and foreign exchange markets are open for business in New York, New York and Chicago, Illinois;

"**Buyer Conditions Precedent**" means those condition precedent set forth in Article 6.3;

[Purchase and Sale Agreement (MSN 24717)]

"**Cape Town Convention**" means the Convention on International Interests in Mobile Equipment and its Protocol on Matters Specific to Aircraft Equipment, concluded in Cape Town on 16 November 2001;

"**Claim**" has the meaning given to that term in Article 11.1;

"**Delivery**" means the time at which the Buyer shall obtain title to the Aircraft in accordance with this Agreement.  The following concurrent Delivery events shall be performed in accordance with this Agreement:  (i) tender by Seller of the Aircraft for delivery, (ii) acceptance by Buyer of the Aircraft, (iii) sale by transfer of title to the Aircraft, (iv) payment by Buyer of monies due upon Delivery of the Aircraft, and (v) completion of those events set forth in Article 6;

"**Delivery Condition**" means the condition of the Aircraft required under Article 8 and Schedule 5;

"**Delivery Date**" means the date on which Delivery shall occur in respect of the Aircraft;

"**Delivery Location**" means San Bernardino, California, U.S.A., or such other location as may be mutually agreed in writing between the parties;

"**Deposit**" means an amount equal to 10% of the Purchase Price for the Aircraft;

"**Discrepancy Notice**" has the meaning given to that term in Article 5.2;

"**Engine**" means each of the two (2) used CFM International, Inc. CFM56-3C-1 engines as more particularly described in Schedule 1 relating to the Aircraft;

"**Event of Loss**" means any of the following events with respect to the Aircraft:

(i) loss of the Aircraft or the use thereof due to hijacking, capture, detention, theft or disappearance resulting in the loss of possession or use of the Aircraft by the Seller for (i) more than ten (10) consecutive days or (ii) if earlier, a period ending on the Outside Delivery Date;

(ii) destruction or damage to the Aircraft which the Seller reasonably determines to be beyond economic repair or rendition of the Aircraft permanently unfit for normal use for any reason whatsoever;

(iii) any event with respect to the Aircraft which results in an insurance settlement on the basis of an actual, constructive, compromised, agreed or arranged total loss; or

(iv) the compulsory acquisition, confiscation, condemnation, expropriation, seizure or taking of, or requisition of title to or use of, the Aircraft which

2

[Purchase and Sale Agreement (MSN 24717)]

deprives the Seller of possession and/or use of the Aircraft for (i) more than thirty (30) days or (ii) if earlier, a period ending on the Outside Delivery Date;

"**Excusable Delay**" shall have the meaning given to such term in Article 14;

"**FAA**" means the Federal Aviation Administration of the United States;

"**FAA Bill of Sale**" means the FAA form aircraft bill of sale (AC Form 8050-2) for the Aircraft, suitable for conveying title to the Aircraft for filing and recording with the FAA;

"**FAA Counsel**" means Lytle Soule and Curlee, 1200 Robinson Renaissance, 119 North Robinson Road, Oklahoma City, OK 73102, to the attention of Ms. Patricia Hanson;

"**Governmental Entity**" means and includes (i) any national government, political sub-division thereof, or local jurisdiction therein, (ii) any board, commission, department, division, instrumentality, court, or agency of any thereof, however constituted and (iii) any association, organization, or institution of which any thereof is a member or to whose jurisdiction any thereof is subject or in whose activities any thereof is a participant;

"**Insurances**" means the policies or contracts of insurance required to be effected under Article 10;

"**International Interest**" has the meaning set forth in the Cape Town Convention;

"**International Registry**" means the International Registry of Mobile Assets established under the Cape Town Convention;

"**Lien**" means any mortgage, charge, pledge, lien, security interest, lease, sublease, International Interest, Prospective International Interest, encumbrance, assignment, hypothecation, statutory right, title retention, claim, right of set-off or any other agreement or arrangement having the effect of conferring security;

"**Manuals and Technical Records**" means those records, logs, technical data, manuals and other documents relating to the maintenance and operation of the Aircraft that are specified on Schedule 6;

"**Manufacturer**" means The Boeing Company, a Delaware corporation;

"**Outside Delivery Date**" means December 15, 2008;

"**Parts**" means all appliances, components, parts, instruments, appurtenances, accessories, furnishings and other equipment of whatever nature (other than complete engines) which are incorporated or installed on or attached to the Aircraft as of the Delivery thereof;

"**Purchase Price**" means the purchase price of the Aircraft set forth in Article 3;

3

[Purchase and Sale Agreement (MSN 24717)]

"**Prospective International Interest**" has the meaning set forth in the Cape Town Convention;

"**Rejected Aircraft**" has the meaning given to that term in Article 5.2;

"**Rejection Notice**" has the meaning given to that term in Article 5.2;

"**Seller Conditions Precedent**" means those condition precedent set forth in Article 6.1;

"**Seller Taxes**" means (i) any Tax that would not have been imposed but for the gross negligence or willful misconduct of Seller or the inaccuracy of any representation by Seller in this Agreement; or, (ii) any Tax that (a) is based on or measured by the gross or net income, gross receipts (except for taxes that are based upon or measured by gross receipts which are in the nature of a sales, use, value added, transfer or similar tax), capital, net worth, accumulated earnings or conduct of business of Seller or (b) relates to the period prior to the Delivery Date of the Aircraft.

"**Taxes**" means any and all present and future taxes (including, without limitation, property, sales, use, consumption, license, revenue, value added, levies, imposts, excise and stamp taxes and customs and other duties), assessments, fees (including, without limitation, documentation, license, filing and registration fees) and charges, of any nature or kind whatsoever, together with any penalties, fines, additions, tax or interest thereon, however imposed, withheld, levied, or assessed by any Governmental Entity, any international authority or any other taxing authority and "Tax" and "Taxation" shall be construed accordingly;

"**Technical Acceptance Certificate**" means a technical acceptance certificate substantiation in the form of Schedule 3 executed and delivered by the Buyer to Seller pursuant to Article 5.2 relating to the Aircraft;

"**Termination Event**" means, in respect of the Seller or the Buyer, any of the following events:

(a)     such party shall stop or suspend, or admit its inability to make, payment of its indebtedness as they come due, or shall make a general assignment for the benefit of creditors generally, or shall commence negotiations with one or more of its creditors with a view to the general re-adjustment or re-scheduling of all or a substantial part of its indebtedness or propose or enter into any composition or other arrangement for the benefit of its creditors generally or any class of creditors; or

(b)     an order, judgment or decree shall be entered by a court or authority of competent jurisdiction (whether with or without the consent of such person) (x) for the appointment of a receiver, administrator, administrative receiver, liquidator, conservator, sequestrator, trustee or similar insolvency officer of such party or of a substantial part of its assets or (y) winding-up, extinguishing, liquidating or dissolving such person or declaring such party to be insolvent or bankrupt; or

4

[Purchase and Sale Agreement (MSN 24717)]

(c)     a petition is presented or a meeting convened or other proceedings or steps are taken for the winding-up, extinction, liquidation or dissolution of either party or under any bankruptcy, insolvency or similar law relating to bankruptcy, reorganization, suspension of payments, composition or adjustment of debts in respect of such party (other than any petition, proceedings or steps which are presented or taken by a party other than such party and which petition, proceedings or steps are being contested by such party, in good faith and by appropriate proceedings and discharged or dismissed within thirty (30) days); and

"**US$**" and "**Dollars**" each means the lawful currency of the United States of America.

**Section 1.2**     Article headings and the Index are inserted for convenience of reference only and shall be ignored in the interpretation of this Agreement.

**Section 1.3**     In this Agreement, unless the context otherwise requires:

(a)     References to Articles and Schedules are to be construed as references to the Articles of, and schedules to, this Agreement and references to this Agreement include its Schedules;

(b)     Words importing the plural shall include the singular and vice versa; and

(c)     References to a person shall be construed as including, without limitation, references to an individual, firm, company, corporation, unincorporated body of persons and any Governmental Entity.

## ARTICLE 2.

## SALE AND PURCHASE

**Section 2.1**     The Seller agrees to sell to the Buyer and the Buyer agrees to purchase from the Seller the Aircraft on the terms and conditions contained herein.

## ARTICLE 3.

## PURCHASE PRICE

**Section 3.1**     The Buyer shall pay to the Seller the purchase price in an amount of Five Million Five Hundred Thousand Dollars (US$5,500,000) for the Aircraft (the "**Purchase Price**") as follows:

(a)     Buyer will pay the Deposit to Seller on or before October 16, 2008.. The Deposit shall be non-refundable (except as expressly provided in Articles 5.2, 6.5 and 13). Interest earned on the Deposit shall be, in all instances, for the account of the Seller. Seller need not segregate any Deposit in a separate account and may commingle such amounts with its other funds.

5

[Purchase and Sale Agreement (MSN 24717)]

(b)      On the Delivery Date, subject to satisfaction or waiver of the Buyer Conditions Precedent set out in Articles 6.3(b), (d), (e) and (f), and immediately prior to the Seller's transfer of the Bill of Sale, the Buyer will wire to the Seller and the Seller shall have received in its bank account identified below an amount equal to the difference between the Purchase Price and the related Deposit.  Seller's designated bank account (unless Seller directs Buyer in writing otherwise) is:

> JPMorgan Chase
> One Chase Manhattan Plaza
> New York, NY  10005
>
> ABA Number for Wire Transfers: 021000021
> United Airlines Special Account
> Account Number 51-67795

## ARTICLE 4.

## PAYMENTS

**Section 4.1**     The balance of the Purchase Price shall be remitted in immediately available funds to the account specified in Article 3.1(b) or to such other account of, and as, the Seller shall specify in writing.

**Section 4.2**     All sums other than the Purchase Price, if any, payable by either party hereunder shall be paid to such bank account of, and as, the party receiving such sum may designate.

## ARTICLE 5.

## INSPECTION, DELIVERY AND ACCEPTANCE

**Section 5.1**     The Buyer and the Seller currently anticipate that Delivery of the Aircraft will take place on the applicable date specified on Schedule 1 hereto (or such other date as the parties hereto shall agree), but in no event shall such Delivery occur later than the Outside Delivery Date.

**Section 5.2**     The Buyer acknowledges that it has satisfactorily completed its initial inspection of the Aircraft.  In furtherance of the transactions contemplated hereby, the Seller shall make the Aircraft and the Manuals and Technical Records in respect of the Aircraft available to the Buyer as provided in and in accordance with Schedule 5 and shall provide Buyer with the opportunity to complete, at Buyer's sole expense, the additional inspections contemplated by Schedule 5 to this Agreement in order to confirm that the Aircraft is in the Delivery Condition.  The Buyer shall (i) accept the Aircraft (as evidenced by the issuance of a Technical Acceptance Certificate), (ii) reject the Aircraft by issuance by Buyer of written notice to such effect to Seller (a "**Rejection Notice**"), or (iii) indicate in writing to Seller (a "**Discrepancy Notice**") any discrepancies discovered during such inspection and as a condition

6

[Purchase and Sale Agreement (MSN 24717)]

precedent to Buyer's obligations to accept the Delivery of the Aircraft, Seller shall correct or cause to be corrected such discrepancies on or before the Delivery Date as provided in Schedule 5 at Seller's sole cost and expense (following which Buyer shall issue a Technical Acceptance Certificate in respect of the Aircraft); provided, that, in lieu of correcting each or any discrepancies specified in such Discrepancy Notice, Seller may (unless Buyer waives the right to have the applicable discrepancies corrected) elect to terminate this Agreement (and the Aircraft becoming a "**Rejected Aircraft**") whereupon all obligations of the parties hereunder shall be terminated and Seller and Buyer shall promptly refund to Buyer the Deposit (without interest). For avoidance of doubt, if upon the completion of such inspection of the Aircraft, Buyer fails to provide Seller a Discrepancy Notice and fails to provide a Technical Acceptance Certificate or Rejection Notice for the Aircraft or provides a Rejection Notice for the Aircraft, the Aircraft shall be considered a Rejected Aircraft.

**Section 5.3**    On the scheduled Delivery Date, subject to satisfaction or waiver of the Buyer Conditions Precedent set out in Articles 6.3(b), (d), (e) and (f), the Buyer shall (i) execute the Acceptance Certificate and send it to the Seller and (ii) remit the balance of the Purchase Price to the Seller upon Delivery.

**Section 5.4**    Upon the Seller's receipt of the Acceptance Certificate and the balance of the Purchase Price thereof, the Seller shall execute the Bill of Sale and the FAA Bill of Sale and deliver them to Buyer.

**Section 5.5**    After each party's actions in accordance with the foregoing provisions have been successfully performed in respect of the Aircraft, Seller shall instruct FAA Counsel, upon Buyer's request, to consent to registration on the International Registry of the "contract of sale" (as defined in the Cape Town Convention) constituted by the Bill of Sale (covering the applicable airframe and engines) naming Seller as "seller" and Buyer as "buyer". The risk of loss of, or damage to, the Aircraft and the Manuals and Technical Records in respect thereof shall pass from the Seller to the Buyer upon Delivery of the Aircraft by the Seller to the Buyer.

**Section 5.6**    The Aircraft to be sold hereunder shall be sold and delivered to the Buyer, subject to Article 7.1, "AS IS", "WHERE IS" and SUBJECT TO EACH AND EVERY DISCLAIMER OF WARRANTY AND REPRESENTATION AS SET FORTH IN ARTICLE 7.3. Subject to the satisfaction or waiver of all the conditions precedent referred to in Article 6.3, the Buyer shall, unconditionally accept the Aircraft for all purposes hereunder upon the tender thereof by the Seller provided that the Aircraft is in the Delivery Condition on the applicable Delivery Date. Then, the Buyer shall execute and deliver an Acceptance Certificate for the Aircraft. Execution and delivery of an Acceptance Certificate for the Aircraft shall constitute an acknowledgment by the Buyer that the Aircraft is in the condition required by this Agreement and is satisfactory for the purposes of this Agreement.

**Section 5.7**    Buyer will pay and agrees to indemnify and hold Seller harmless from any Taxes (including, without limitation, sales, use or value added taxes but excluding Seller Taxes) imposed by any taxing authority and required to be paid by Buyer or Seller as a result of the sale or delivery of the items pursuant to this Agreement. Seller shall cooperate with Buyer such that

[Purchase and Sale Agreement (MSN 24717)]

the structure and timing of the transfers contemplated hereby can be arranged so as to avoid or minimize any such Taxes.

**Section 5.8**     Upon execution of this Agreement Buyer shall provide Seller with the appropriate sale/use tax exemption certificate.

**Section 5.9**     Buyer covenants that, for the two-year period commencing with the Delivery Date, neither it nor any subsequent owner and/or operator of the Aircraft will operate the Aircraft in passenger revenue service anywhere within the continental United States.

## ARTICLE 6.

### CONDITIONS PRECEDENT

**Section 6.1**     The Seller's obligation to sell the Aircraft hereunder is subject to the following conditions precedent:

(a)     on or before the Delivery Date, Seller shall have received Buyer's payment of the balance of the Purchase Price, in accordance with the terms hereof;

(b)     representations and warranties of the Buyer set out in this Agreement being true and correct with respect to the facts and circumstances existing immediately prior to the Delivery of the Aircraft;

(c)     on or before the Delivery Date, Buyer shall have accepted the Aircraft, as evidenced by delivery by Buyer to Seller of a completed and executed Acceptance Certificate and Technical Acceptance Certificate;

(d)     on or before the Delivery Date, Seller shall have received the certificate of insurance and the report of Buyer's independent insurance broker evidencing the coverage required under Article 10 hereof with respect to the Aircraft, in form and substance reasonably satisfactory to Seller;

(e)     no Event of Loss in respect of the Aircraft having occurred;

(f)     Buyer shall not be in default in the performance or observance of any material term or obligation set forth herein; and

(g)     Seller shall have received from Buyer a completed and executed sales tax exemption certificate (if applicable) valid for the Delivery Location in form and substance satisfactory to Seller.

**Section 6.2**     The Seller Conditions Precedent are for the sole benefit of the Seller and may be waived or deferred, in whole or in part, with or without conditions, by the Seller.

8

[Purchase and Sale Agreement (MSN 24717)]

**Section 6.3**    The Buyer's obligation to purchase the Aircraft hereunder is subject to the following conditions precedent:

(a)    tender of the Aircraft and the Manuals and Technical Records related thereto in the Delivery Condition required pursuant to Article 8 and Schedule 5 at the Delivery Location (including, without limitation, in the case of the Aircraft, the MPD bridge package for reference in order for Buyer to bring the Aircraft to the Boeing standard maintenance program on a post-delivery basis), and tender of a duly executed Bill of Sale and FAA Bill of Sale on the applicable Delivery Date, in each case accordance with the terms of this Agreement;

(b)    the Buyer shall have delivered a Technical Acceptance Certificate in respect of the Aircraft in accordance with Article 5.2;

(c)    representations and warranties of the Seller set out in this Agreement being true and correct with respect to the facts and circumstances existing immediately prior to such Delivery;

(d)    no Event of Loss in respect of the Aircraft or any Engine having occurred;

(e)    on the applicable Delivery Date, Seller will tender to Buyer legal and beneficial title to the Aircraft free and clear of any Liens, other than Liens arising by or through Buyer; and

(f)    confirmation that the Seller has duly appointed and authorized FAA counsel to act as its professional user entity at the International Registry in respect of the Aircraft, with the power to register, on the International Registry upon Delivery of the Aircraft, at the Buyer's election, the Bill of Sale in favor of the Buyer.

**Section 6.4**    The Buyer Conditions Precedent are for the sole benefit of the Buyer and may be waived or deferred in whole or in part, with or without conditions, by the Buyer.

**Section 6.5**    Except in the event of a delay in Delivery of the Aircraft permitted under Article 14, if Delivery of the Aircraft has not occurred by the Outside Delivery Date (or such later date agreed to by Buyer and the Seller in writing), then Buyer or Seller may terminate this Agreement by giving written notice to the other, and if such election to terminate is made, then termination under this Article shall terminate and discharge all obligations and liabilities of Buyer and Seller hereunder, except that the Deposit shall be retained by Seller unless such termination is due to Seller's breach of an obligation hereunder or Seller's failure to act in good faith (in which case the Deposit shall be returned to Buyer).  Except as expressly provided for in Article 13, the termination provisions set forth in this Article 6.5 are in substitution for any other rights of termination or contract lapse arising by operation of law by virtue of such delay.

9

[Purchase and Sale Agreement (MSN 24717)]

## ARTICLE 7.

### REPRESENTATIONS AND WARRANTIES

**Section 7.1**    The Seller hereby represents and warrants to the Buyer that:

(a)    on the Delivery Date:  (a) Seller will have all legal and beneficial title to the Aircraft, and (b) title thereto will be transferred to Buyer in full free and clear of any and all Liens (other than Liens arising by or through Buyer);

(b)    the Seller is a corporation duly incorporated under the laws of the State of Delaware and has the power and authority to carry on its business as presently conducted and to perform its obligations under this Agreement;

(c)    this Agreement has been duly authorized by all necessary action on the part of the Seller and neither the execution and delivery of this Agreement nor the consummation of the transactions as contemplated hereby nor compliance by the Seller with any of the terms and provisions hereof will contravene any law applicable to the Seller;

(d)    this Agreement has been duly entered into and delivered by the Seller and constitutes the legal, valid and binding obligation of the Seller enforceable against it in accordance with its terms; and

(e)    the execution and delivery by the Seller of this Agreement and any of the transactions of the Seller contemplated hereby, have received, and the Seller has complied with, every necessary consent, approval, order, or authorization of, or registration with, or the giving of prior notice to, any Governmental Entity having jurisdiction.

**Section 7.2**    The Buyer hereby represents and warrants to the Seller that:

(a)    the Buyer is a limited liability company duly organized under the laws of the State of Nevada and has the power and authority to carry on its business as presently conducted and to perform its obligations under this Agreement;

(b)    this Agreement has been duly authorized by all necessary action on the part of the Buyer, and neither the execution and delivery of this Agreement nor the consummation of the transactions as contemplated hereby nor compliance by the Buyer with any of the terms and provisions hereof will contravene any law applicable to the Buyer;

(c)    this Agreement has been duly entered into and delivered by the Buyer and constitutes the legal, valid and binding obligation of the Buyer enforceable against it in accordance with its terms;

(d)    the execution and delivery by the Buyer of this Agreement and any of the transactions by the Buyer contemplated hereby, have received and the Buyer has complied with

10

[Purchase and Sale Agreement (MSN 24717)]

every necessary consent, approval, or order or authorization of, or registration with, or the giving of prior notice to any Governmental Entity having jurisdiction;  and

      (e)    Export Control.

      (i)    Neither Buyer nor any of its shareholders, directors, officers, employees, parents, subsidiaries or affiliates (A) are owned or controlled by, or act on behalf of, any governments, countries, organizations, entities or persons (including, for the avoidance of doubt, Iran, North Korea and Sudan) that are subject to any U.S. or European Union embargo or economic sanction currently in force, or (B) are named, identified or described on any blocked persons list, sanctions list or list of specifically designated nationals issued or administered by the U.S. Department of the Treasury, Office of Foreign Assets Control, or on any denied persons list, entities list, unverified list, debarred list or terrorist list issued or administered by the U.S. Department of Commerce, Bureau of Industry and Security, or by the U.S. Department of State, Directorate of Defense Trade Controls (collectively, "**Prohibited Persons**");

      (ii)    Buyer is not purchasing the Aircraft for or on behalf of any Prohibited Persons or for use by any Prohibited Persons; and

      (iii)    The Aircraft will not at any time (A) be registered, stationed or based, or sold, leased or subleased in any manner whatsoever to any person or entity incorporated or habitually based, in any country or jurisdiction (including, for the avoidance of doubt, Iran, North Korea and Sudan) which is subject to any U.S. or European Union embargo or economic sanction or (B) otherwise be dealt with in any manner which contravenes any U.S. or European Union sanction or embargo or any other applicable trade regulation thereof.

    **Section 7.3**    THE AIRCRAFT (INCLUDING ANY PARTS AND THE MANUALS AND TECHNICAL RECORDS RELATED TO THE AIRCRAFT) SHALL BE SOLD IN "AS IS" AND "WHERE IS" CONDITION AT DELIVERY, WITH ALL FAULTS AND WITHOUT RECOURSE TO SELLER, AND, WITH THE EXCEPTION OF THE REPRESENTATIONS AND WARRANTIES PROVIDED FOR IN ARTICLE 7.1, THE SELLER MAKES NO (AND WILL BE DEEMED TO HAVE MADE NO) WARRANTIES, GUARANTEES OR REPRESENTATIONS OF ANY KIND, EITHER EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, THAT SHALL SURVIVE DELIVERY OF THE AIRCRAFT (INCLUDING ANY PARTS AND THE MANUALS AND TECHNICAL RECORDS RELATED TO THE AIRCRAFT) DELIVERED BY THE SELLER TO THE BUYER HEREUNDER.  BUYER HEREBY WAIVES ANY AND ALL OTHER REPRESENTATIONS, WARRANTIES, DUTIES, AND GUARANTEES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, CONCERNING THE AIRCRAFT (INCLUDING ANY PARTS AND THE MANUALS AND TECHNICAL RECORDS RELATED TO THE AIRCRAFT) OR THE AIRWORTHINESS, OR THE VALUE, CONDITION, DESIGN, OPERATION, DURABILITY OR COMPLIANCE WITH SPECIFICATION OF THE AIRCRAFT (INCLUDING ANY PARTS AND THE MANUALS AND TECHNICAL

[Purchase and Sale Agreement (MSN 24717)]

RECORDS RELATED TO THE AIRCRAFT), INCLUDING, BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, AND BUYER HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES IT MAY HAVE AGAINST SELLER RELATING TO ANY OF THE FOREGOING AND ARISING BY LAW OR OTHERWISE INCLUDING BUT NOT LIMITED TO ANY OBLIGATION ARISING FROM THE NEGLIGENCE (WHETHER ACTIVE, PASSIVE OR ANY OTHER TYPE) OF SELLER, ANY AFFILIATE OF SELLER, OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, AGENTS OR EMPLOYEES OR WITH RESPECT TO LOSS OF USE, REVENUE OR PROFIT, THE EXISTENCE OF ANY LATENT, INHERENT OR ANY OTHER DEFECT (WHETHER OR NOT DISCOVERABLE), OR AS TO THE INFRINGEMENT OF ANY PATENT, COPYRIGHT, DESIGN OR OTHER PROPRIETARY RIGHT, OR OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES. ANY PRIOR REPRESENTATIONS OR STATEMENTS, WHETHER ORAL OR WRITTEN, MADE BY SELLER (OR ANY AFFILIATE THEREOF) AS TO THE CONDITION OR FITNESS OF THE AIRCRAFT (INCLUDING ANY PARTS AND THE MANUALS AND TECHNICAL RECORDS RELATED TO THE AIRCRAFT), OR THEIR CAPABILITY OR CAPACITY, ARE SUPERSEDED HEREBY AND ANY SUCH REPRESENTATIONS OR STATEMENTS NOT SPECIFICALLY SET FORTH IN THIS AGREEMENT ARE HEREBY WITHDRAWN BY SELLER (ON ITS OWN BEHALF AND ON BEHALF OF ANY OF ITS AFFILIATES WHICH MAY HAVE MADE ANY SUCH REPRESENTATION OR STATEMENT), SHALL NOT BE APPLICABLE TO THE TRANSACTIONS CONTEMPLATED HEREBY AND ARE OF NO FURTHER FORCE AND EFFECT, AND BUYER ACKNOWLEDGES THAT BUYER HAS NOT RELIED AND IS NOT RELYING ON ANY SUCH REPRESENTATION OR STATEMENT.

## ARTICLE 8.

### CONDITION OF AIRCRAFT

**Section 8.1**   The Aircraft shall be delivered by the Seller to the Buyer at the Delivery Location in an "As Is" and "Where Is" condition and otherwise in compliance with the conditions set out on Schedule 5.

**Section 8.2**   At Delivery of the Aircraft and subject to the satisfaction of the conditions precedent set forth in Article 6, the Buyer shall accept delivery of the Aircraft and deliver a completed and signed Acceptance Certificate relating thereto and its other delivery requirements.

12

[Purchase and Sale Agreement (MSN 24717)]

## ARTICLE 9.

## INTENTIONALLY OMITTED.

## ARTICLE 10.

## INSURANCES

**Section 10.1**   Effective upon the delivery the Aircraft, and for a period of three (3) years thereafter, Buyer will at its expense maintain, or shall cause each subsequent operator of the Aircraft (whether as owner, lessee or such other capacity in which such operator has possession of the Aircraft) to maintain, insurance for comprehensive airline liability, aircraft third party, contractual liability, war risks, property damage, passenger, baggage, cargo and mail and airline general third party (including products) legal liability in an amount not less than Five Hundred Million United States Dollars (US$500,000,000) per occurrence combined single limit bodily injury and property damage aircraft liability insurance with regard to the Aircraft with insurance carriers of recognized responsibility. All coverage under this Article 10.1 shall be endorsed: (a) to name all Seller Indemnitees as additional insureds ("**Additional Insureds**") thereunder; (b) to expressly provide that all of the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured and shall waive, any right of subrogation of the insurers against each Additional Insured; (c) to expressly provide that, in respect of the respective interests of each Additional Insured in such policies, the insurance shall not be invalidated by any action or inaction of Buyer or such other operator or any affiliate thereof (or any director, officer, agent or employee thereof) or any other third party (other than the Additional Insureds) and shall insure the respective interests of the Additional Insureds, as they appear, regardless of any breach or violation of any warranty, declaration or condition contained in such policies by Buyer or such other operator or any affiliate thereof (or any director, officer, agent or employee thereof) or any other third party (other than the Additional Insureds); (d) to expressly provide that such insurance shall be primary without any right of contribution from any other insurance which is carried by any Additional Insured; (e) to expressly waive any right of the insurers to set-off or counterclaim or any other deduction, whether by attachment or otherwise, in respect of any liability of any Additional Insured; (f) to expressly provide that all of the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured and shall waive any right of subrogation of the insurers against each Additional Insured; and (g) to expressly cover the contractual liability to each of the Additional Insureds assumed by Buyer in Article 11.1 hereof but only to the extent of the contractual liability assumed by Buyer in Article 11.1 hereof.

**Section 10.2**   Buyer will furnish (or cause to be furnished) to Seller, at least three (3) days prior to the Delivery of the Aircraft (and upon any renewal of such insurance contracts), the required insurance certificates together with broker's letters certifying that such policies of insurance, endorsed as required herein, are in full force and effect (together with the waivers of subrogation as described in Article 10.1), and stating the opinion of such firm that insurance complies with the terms hereof, that all premiums in connection with such insurance then due have been paid, and that the respective Additional Insureds will be given (30) days prior written

13

[Purchase and Sale Agreement (MSN 24717)]

notice by the insurers in the event of either cancellation or material change in such coverage or in said waivers, except that with respect to war risk coverage, seven (7) days prior written notice will be given or, if seven (7) days notice is not available, such lesser period of time as is generally being made available by insurers. Buyer acknowledges that the failure to provide such report to Seller shall have the same effect hereunder as the failure to maintain the insurance otherwise required by this Article 10.

**Section 10.3** Notwithstanding any other provision of this Agreement, the obligations of the parties under this Article 10 will survive the consummation, completion, or termination (or combination of any thereof) of this Agreement.

## ARTICLE 11.

## INDEMNITIES

**Section 11.1** Buyer will be responsible for and shall indemnify, defend and hold harmless Seller and any affiliate thereof, and each of their respective officers, directors, agents and employees (each, a "**Seller Indemnitee**"), on an after-tax basis, from and against any and all claims, damages, losses, liabilities, obligations, penalties and judgments of every kind and nature for personal injury, death or property damage, including all costs and expenses, including reasonable attorneys' fees and expenses, incident thereto, but excluding Taxes (hereinafter, collectively, "**Claims**"), which occur on or after the relevant delivery of the Aircraft (including any Engines, Parts and the Manuals and Technical Records related to the Aircraft), and which directly or indirectly arises in any manner out of or in connection with (a) the ownership by Buyer or by any third person on or after the delivery of the Aircraft (including any Engines, Parts and the Manuals and Technical Records related to the Aircraft), or (b) the use, possession, dispossession, re-possession, control, operation, location, landing, departure, condition, acceptance, rejection, delivery, non-delivery, re-delivery, registration, de-registration, re-registration, sale, leasing, wet leasing, chartering, subleasing, importation, exportation, transfer of title or other disposition of title, abandonment, storage, maintenance, service, repair, overhaul, testing, design, modification, dismantling, disassembly or re-assembly by Buyer or by any third person on or after the relevant delivery of the Aircraft (including any Engine, Parts and the Manuals and Technical Records related to the Aircraft), or (c) any condition of, or defect in, the Aircraft (including any Engine, Parts and the Manuals and Technical Records related to the Aircraft), or any Claim for patent, trademark or copyright infringement, regardless of whether such condition came into existence, or was discovered or reported, on, before or after the relevant delivery of the Aircraft. The foregoing indemnity shall apply to all Claims, regardless of whether any such Claim arises in tort (including, without limitation, strict liability); provided, however, that this Article 11.1 shall not release any Seller Indemnitee from liability arising from the breach by such Seller Indemnitee of any representation or warranty in this Agreement and shall not apply to any Claim to the extent arising from Seller's gross negligence or willful misconduct. Buyer will pay a Seller Indemnitee upon demand for all reasonable expenses (including without limitation, all reasonable legal and accountants' fees and disbursements, and interest) incurred by such Seller Indemnitee in enforcing such Seller Indemnitee's rights against Buyer under this Article 11.1. Neither the consummation of the sale pursuant to this Agreement

14

[Purchase and Sale Agreement (MSN 24717)]

nor any subsequent lease, sale or other transfer of the Aircraft shall release Buyer from its obligations pursuant to this Article 11.1. NOTWITHSTANDING THE FOREGOING, NEITHER BUYER NOR SELLER SHALL BE LIABLE TO THE OTHER PARTY FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES SUFFERED OR INCURRED BY THE OTHER PARTY.

**Section 11.2**   If any Claim is made by a Seller Indemnitee, such Seller Indemnitee, upon receiving notice of such Claim, will promptly notify Buyer; provided however that failure by the Seller Indemnitee to so notify the Buyer shall not relieve Buyer of its obligations to indemnify hereunder except to the extent Buyer is materially prejudiced by such failure.

**Section 11.3**   Notwithstanding any other provision of this Agreement, the obligations of the parties under this Article will survive the consummation, completion, or termination (or any combination of any thereof) of this Agreement.

## ARTICLE 12.

### FURTHER ASSURANCE

Each of the parties shall at its cost use its reasonable efforts to take, or cause to be taken, such action and to execute and deliver or cause to be executed and delivered such additional documents and instruments and to do, or cause to be done, all things reasonably necessary, proper or advisable under the provisions of this Agreement and applicable law to consummate and carry out all transactions contemplated by this Agreement.

## ARTICLE 13.

### TERMINATION

**Section 13.1**   Without regard to anything contained in this Agreement to the contrary, the Buyer shall have the right to terminate this Agreement (i) if there shall have occurred and be continuing a Termination Event solely in respect of the Seller, (ii) if the Seller shall default in any of its material obligations hereunder, or (iii) if there shall have occurred an Excusable Delay in respect of the Aircraft and such Excusable Delay is continuing on the Outside Delivery Date.

**Section 13.2**   Without regard to anything contained in this Agreement to the contrary, the Seller shall have the right to terminate this Agreement (i) if there shall have occurred and be continuing a Termination Event in respect of the Buyer, (ii) if the Buyer shall default in any of its material obligations hereunder, or (iii) if there shall have occurred an Excusable Delay in respect of the Aircraft and such Excusable Delay is continuing on the Outside Delivery Date.

**Section 13.3**   If the Buyer shall have properly terminated this Agreement pursuant to Article 13.1, then the Seller shall refund to Buyer the Deposit (without interest). In addition, if the Buyer shall have properly terminated this Agreement as a result of any event or action within the reasonable control of the Seller pursuant to Article 13.1, then the Buyer may pursue any remedies against the Seller it may have under applicable law. In no event shall the Seller be

[Purchase and Sale Agreement (MSN 24717)]

liable to the Buyer for consequential or punitive damages, each of which is hereby expressly waived.

**Section 13.4**   If the Seller shall have properly terminated this Agreement pursuant to Article 13.2, then the Seller shall retain the Deposit (together with any interest thereon).  If the Seller shall have properly terminated this Agreement as a result of any event or action within the reasonable control of the Buyer pursuant to Article 13.2, then Seller may pursue any remedies against the Buyer it may have under applicable law.  In no event shall the Buyer be liable to the Seller for consequential or punitive damages, each of which is hereby expressly waived.

## ARTICLE 14.

## EXCUSABLE DELAY

**Section 14.1**   Neither party shall be responsible nor be liable for any damages (upon termination by the other party or otherwise) nor deemed to be in default on account of delays in the Delivery of the Aircraft or any of the Manuals and Technical Records relating thereto or the failure of any other act to be performed by such party hereunder in each case due to any of the following causes: acts of God, war, warlike operations, insurrections, riots, fires, floods, explosions, earthquakes, serious accidents, epidemics or quarantine restrictions, any acts of Governmental Entity, strikes or labor troubles causing cessation, slow-down or interruption of work, failure of or delay in transportation, or inability, after due and timely diligence, to procure materials, accessories, equipment or parts, damage to the Aircraft, or arising out of any other cause to the extent it is beyond such party's reasonable control and not occasioned by such party's willful misconduct (any such event being an "**Excusable Delay**").

**Section 14.2**   In the event of any Excusable Delay, the party whose performance is thereby precluded shall advise the other party concerning the nature and approximate extent thereof and shall thereafter from time to time advise the other party concerning the current status of such delays.

## ARTICLE 15.

## ASSIGNMENT

Neither Buyer nor Seller shall be entitled to assign and/or transfer any of its rights or obligations hereunder to any person without the prior written consent of the other party, such consent not to be unreasonably withheld.

## ARTICLE 16.

## CONFIDENTIALITY

Each of the parties hereto agrees that it shall treat the existence of, and the terms and conditions of, this Agreement as strictly confidential and will not without the prior written consent of the other disclose such information to any parties except that each party may disclose

16

[Purchase and Sale Agreement (MSN 24717)]

such information to its legal and other professional advisers, to its auditors, and their respective legal advisors to the extent as necessary, to any parties entitled pursuant to an order or relevant request of any Governmental Entity having jurisdiction, or otherwise in accordance with any obligation to disclose imposed by any applicable law or regulation or in connection with any proceedings to enforce the terms and conditions hereof.

## ARTICLE 17.

### MISCELLANEOUS

**Section 17.1**   Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction, shall as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

**Section 17.2**   No term or provision of this Agreement may be changed, waived, discharged, or terminated orally, but only by an instrument in writing signed by the party against which the enforcement of the change, waiver, discharge or termination is sought.

**Section 17.3**   Save as expressly agreed herein, this Agreement is the sole agreement between the parties with regard to the subject matter contained herein and supersedes all prior agreements or understandings, written or oral, with respect thereto and shall be effective for all purposes as of the date first above written.

## ARTICLE 18.

### NOTICES

**Section 18.1**   Every notice, request, demand or other communication under this Agreement shall:

      (a)    be in writing by prepaid letter, email or by facsimile;

      (b)    be deemed to have been received, subject as otherwise provided in this Agreement, in the case of a facsimile, when transmitted and full transmission has been separately notified by telephone by the transmitting party and in the case of a letter, when delivered;

      (c)    be sent:

            (1)    to the Buyer:

                Global USA LLC
                222 Lakeview Avenue, 14th Floor
                West Palm Beach, Florida  33401
                Fax:  (561) 370-2900

[Purchase and Sale Agreement (MSN 24717)]

Attn:  John Kunkel, CEO
Email: jk@globalusallc.com

(2)     to the Seller:

United Air Lines, Inc.
77 West Wacker Drive
Chicago, IL 60601
Attn:  Stephen R. Lieberman, Vice President & Treasurer
Telephone:  (312) 997-8000
Facsimile:  (312) 997-8333
Email:  Stephen.Lieberman@united.com and

Attn:  Paul R. Lovejoy, Senior Vice President,
          General Counsel and Secretary
Telephone:  (312) 997-8000
Facsimile:  (312) 997-8333
Email:  paul.lovejoy@united.com

or to such other addressor facsimile number as is notified by one party to the other under this Agreement.

## ARTICLE 19.

## LAW AND JURISDICTION

**Section 19.1**   THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO CONFLICTS OF LAW).

**Section 19.2**   The parties hereto agree that the federal and state courts of New York located in the Borough of Manhattan (the "**New York Courts**") are to have non-exclusive jurisdiction to settle any disputes in connection with this Agreement and any document related hereto and submit to the non-exclusive jurisdiction of the New York Courts in connection with this Agreement. Each party hereto waives objection to the New York Courts on grounds of inconvenient forum, venue or otherwise as regards proceedings in connection with this Agreement.

Nothing in this Article 19 limits the rights of either party to bring proceedings in connection with this Agreement in any other competent jurisdiction or competent jurisdiction or concurrently in more than one jurisdiction.

18

[Purchase and Sale Agreement (MSN 24717)]

## ARTICLE 20.

### BROKER FEES

Each party agrees to indemnify and hold the other party harmless from and against any and all claims, suits, damages, costs and expenses (including, but not limited to, reasonable attorney's fees) asserted by agents, brokers or other third parties, representing or allegedly representing such party, for any commission or compensation of any nature whatsoever based upon the sale or transfer between Seller and Buyer of the Aircraft.

## ARTICLE 21.

### COSTS AND EXPENSES

Except as otherwise expressly provided herein, each party will pay its own expenses incurred in connection with this Agreement and the transactions contemplated hereby, including, without limitation, attorney's fees, filing fees, inspection and other consulting fees.

## ARTICLE 22.

### COUNTERPARTS

This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but both of which together will constitute one and the same agreement, and which shall be sufficiently evidenced by any one of such original counterparts.

SIGNATURE PAGE FOLLOWS

19

[Purchase and Sale Agreement (MSN 24717)]

**IN WITNESS** whereof the parties hereto have entered into this Agreement as of the day and year first above mentioned.

<u>**SELLER**</u>

**UNITED AIR LINES, INC.**

By:_____
Its:

<u>**BUYER**</u>

**GLOBAL USA LLC**

By:_____
Its: CEO

[Purchase and Sale Agreement (MSN 24717)]

IN WITNESS whereof the parties hereto have entered into this Agreement as of the day and year first above mentioned.

**SELLER**

UNITED AIR LINES, INC.

By: _____

Its: *VICE PRESIDENT AND TREASURER*

**BUYER**

GLOBAL USA LLC

By: _____

Its: _____

[Purchase and Sale Agreement (MSN 24717)]

## SCHEDULE 1

### DESCRIPTION OF THE AIRCRAFT

| Aircraft: | ESN: | Delivery Date: |
|---|---|---|
| B737-300<br>MSN 24717<br>REG# N202UA | 724355<br><br>726408 | On or about<br>November 2, 2008 |

CHICAGO/#1858696.2

[Purchase and Sale Agreement (MSN 24717)]

## SCHEDULE 2

## FORM OF BILL OF SALE

United Air Lines Inc., a Delaware corporation having its headquarters at 77 West Wacker Drive, Chicago IL 60601, U.S.A. (the "**Seller**"), is the owner of the full legal and beneficial title to the Aircraft described below (hereinafter referred to as the "**Aircraft**"):

One (1) used Boeing 737-322 aircraft bearing the manufacturer's serial no. _____, together with two used CFM International, Inc. CFM56-3C-1 engines bearing manufacturer's serial nos. _____ and _____, and all components, appliances, parts, accessories, and other equipment installed on, or attached to the Aircraft.

When the context permits, references to the Aircraft shall include the Manuals and Technical Records relating to the Aircraft.

Seller does hereby sell, grant, transfer and deliver all of its right, title and interest in and to the Aircraft unto Global USA, LLC, a limited liability company organized under the laws of the State of Nevada having its principal place of business at 222 Lakeview Avenue, West Palm Beach, FL 33401 (the "**Buyer**") and its successors and assigns, to have and to hold the Aircraft forever. At the time of transfer hereunder, the Aircraft is free and clear of all Liens (other than Liens arising by our through Buyer). The Aircraft is being sold "**as is**" and "**where is**".

EXCEPT AS PROVIDED BELOW, THE AIRCRAFT (INCLUDING ANY PARTS AND THE MANUALS AND TECHNICAL RECORDS RELATED TO THE AIRCRAFT) ARE SOLD ON AN "AS IS" BASIS, WITH ALL FAULTS AND WITHOUT RECOURSE TO SELLER. THE WARRANTY EXPRESSLY SET FORTH IN THE IMMEDIATELY SUCCEEDING PARAGRAPH AND THE OBLIGATIONS AND LIABILITIES OF SELLER THEREUNDER ARE EXPRESSLY IN LIEU OF, AND SELLER WILL NOT BE DEEMED TO HAVE MADE, AND BUYER HAS WAIVED, ANY AND ALL OTHER REPRESENTATIONS, WARRANTIES, DUTIES, AND GUARANTEES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, CONCERNING THE AIRCRAFT (INCLUDING ANY PARTS AND THE MANUALS AND TECHNICAL RECORDS RELATED TO THE AIRCRAFT) OR THE AIRWORTHINESS THEREOF OR THE VALUE, CONDITION, DESIGN, OPERATION, DURABILITY OR COMPLIANCE WITH SPECIFICATION OF THE AIRCRAFT (INCLUDING ANY PARTS AND THE MANUALS AND TECHNICAL RECORDS RELATED TO THE AIRCRAFT), INCLUDING, BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, AND BUYER HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES IT MAY HAVE AGAINST SELLER RELATING TO ANY OF THE FOREGOING AND ARISING BY LAW OR OTHERWISE INCLUDING BUT NOT LIMITED TO ANY OBLIGATION ARISING FROM THE NEGLIGENCE (WHETHER ACTIVE, PASSIVE OR ANY OTHER TYPE) OF SELLER, ANY AFFILIATE OF SELLER, OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, AGENTS OR EMPLOYEES OR WITH RESPECT TO LOSS OF USE, REVENUE OR PROFIT, THE EXISTENCE OF ANY LATENT, INHERENT OR ANY OTHER DEFECT (WHETHER OR NOT

[Purchase and Sale Agreement (MSN 24717)]

DISCOVERABLE), OR AS TO THE INFRINGEMENT OF ANY PATENT, COPYRIGHT, DESIGN OR OTHER PROPRIETARY RIGHT, OR OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES.

ANY PRIOR REPRESENTATIONS OR STATEMENTS, WHETHER ORAL OR WRITTEN, MADE BY SELLER (OR ANY AFFILIATE THEREOF) AS TO THE CONDITION OR FITNESS OF THE AIRCRAFT (INCLUDING ANY PARTS AND THE MANUALS AND TECHNICAL RECORDS RELATED TO THE AIRCRAFT), OR THEIR CAPABILITY OR CAPACITY, ARE SUPERSEDED HEREBY AND ANY SUCH REPRESENTATIONS OR STATEMENTS NOT SPECIFICALLY SET FORTH HEREIN ARE HEREBY WITHDRAWN BY SELLER (ON ITS OWN BEHALF AND ON BEHALF OF ANY OF ITS AFFILIATES WHICH MAY HAVE MADE ANY SUCH REPRESENTATION OR STATEMENT), SHALL NOT BE APPLICABLE TO THE TRANSACTIONS CONTEMPLATED HEREBY AND ARE OF NO FURTHER FORCE AND EFFECT, AND BUYER ACKNOWLEDGES THAT BUYER HAS NOT RELIED AND IS NOT RELYING ON ANY SUCH REPRESENTATION OR STATEMENT.

BUYER EXPRESSLY AGREES AND ACKNOWLEDGES THAT NONE OF THE SELLER, NOR ANY AFFILIATE THEREOF IS THE MANUFACTURER OF THE AIRCRAFT (INCLUDING ANY PARTS AND THE MANUALS AND TECHNICAL RECORDS RELATED TO THE AIRCRAFT), AND THAT THE AIRCRAFT (INCLUDING ANY PARTS AND THE MANUALS AND TECHNICAL RECORDS RELATED TO THE AIRCRAFT) IS OF A MAKE, SIZE, DESIGN AND CAPACITY DESIRED BY BUYER FOR THE PURPOSES INTENDED BY BUYER AND IS A USED AIRCRAFT (INCLUDING ANY PARTS AND THE MANUALS AND TECHNICAL RECORDS RELATED TO THE AIRCRAFT), AND, EXCEPT AS EXPRESSLY SET FORTH IN THE IMMEDIATELY PRECEDING PARAGRAPH, BUYER CONFIRMS THAT IT HAS NOT, IN ENTERING INTO THE PURCHASE AGREEMENT, RELIED ON ANY CONDITION, WARRANTY OR REPRESENTATION BY SELLER, OR ANY AFFILIATE THEREOF, EXPRESS OR IMPLIED, WHETHER ARISING BY APPLICABLE LAW OR OTHERWISE IN RELATION TO ANY OF THE AIRCRAFT (INCLUDING ANY PARTS AND THE MANUALS AND TECHNICAL RECORDS RELATED TO THE AIRCRAFT) INCLUDING, WITHOUT LIMITATION, WARRANTIES OR REPRESENTATIONS AS TO THE DESCRIPTION, QUALITY, DURABILITY, AIRWORTHINESS, MERCHANTABILITY, FITNESS FOR ANY USE OR PURPOSE, VALUE, CONDITION, DESIGN OR OPERATION OF ANY KIND OR NATURE OF ANY OF THE AIRCRAFT (INCLUDING ANY PARTS AND THE MANUALS AND TECHNICAL RECORDS RELATED TO THE AIRCRAFT), AS TO THE ABSENCE OF ANY LATENT, INHERENT OR ANY OTHER DEFECTS (WHETHER OR NOT DISCOVERABLE), OR AS TO THE INFRINGEMENT OF ANY PATENT, COPYRIGHT, DESIGN OR OTHER PROPRIETARY RIGHT; AND THE BENEFIT OF ANY SUCH CONDITION, WARRANTY OR REPRESENTATION BY BUYER, OR ANY AFFILIATE OF ANY THEREOF, IS HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVED BY BUYER.

* * *

SCHEDULE 2
Page 2

[Purchase and Sale Agreement (MSN 24717)]

This Bill of Sale is governed by and shall be construed in accordance with the laws of the State of New York.  Capitalized terms not defined in this Bill of Sale shall have the same meaning as that given to such terms in that certain Purchase and Sale Agreement made between the Seller and the Buyer and dated as of October 15, 2008.

**IN WITNESS** whereof, the Seller has caused this Bill of Sale to be duly executed on this _____ day of _____, 2008.

**UNITED AIR LINES, INC.**

By:_____
Its:

[Purchase and Sale Agreement (MSN 24717)]

## SCHEDULE 3

## FORM OF TECHNICAL ACCEPTANCE CERTIFICATE

Global USA, LLC, (the "**Buyer**") hereby technically accepts delivery of one used (1) Boeing model 737-322 aircraft with manufacturer's serial number _____, two used CFM International, Inc. CFM56-3C-1 engines bearing manufacturer's serial numbers _____ and _____, together with all Parts installed thereon (collectively, the "**Aircraft**") in accordance with the Purchase and Sale Agreement dated as of October 15, 2008, and made between United Air Lines, Inc. (the "**Seller**") and Buyer.  The undersigned representative of Buyer has been duly authorized to acknowledge and does irrevocably acknowledge on behalf of Buyer, that the Aircraft is in the technical condition required for delivery thereof for all purposes of the Purchase and Sale Agreement.

Capitalized terms not defined in this Acceptance Certificate shall have the same meaning as that given to such terms in the Purchase and Sale Agreement.

DATED This _____ Day of _____, 2008.

**GLOBAL USA LLC**

By:_____
Its: _____

CHICAGO/#1858696.2

[Purchase and Sale Agreement (MSN 24717)]

## SCHEDULE 4

## FORM OF ACCEPTANCE CERTIFICATE

Global USA, LLC, (the "**Buyer**") hereby accepts delivery of one (1) used Boeing model 737-322 aircraft with manufacturer's serial number _____, two used CFM International, Inc. CFM56-3C-1 engines bearing manufacturer's serial numbers _____ and _____, together with all Parts installed thereon (collectively, the "**Aircraft**") in accordance with the Purchase and Sale Agreement dated as of October 15, 2008, and made between United Air Lines, Inc. (the "**Seller**") and Buyer.  The undersigned representative of Buyer has been duly authorized to acknowledge and does irrevocably acknowledge on behalf of Buyer, that the Aircraft is in the condition required for delivery thereof for all purposes of the Purchase and Sale Agreement.

Capitalized terms not defined in this Acceptance Certificate shall have the same meaning as that given to such terms in the Purchase and Sale Agreement.

DATED This _____ Day of _____, 2008.

**GLOBAL USA LLC**

By:_____
Its:

CHICAGO/#1858696.2

[Purchase and Sale Agreement (MSN 24717)]

## SCHEDULE 5

### DELIVERY CONDITION OF THE AIRCRAFT AND FINAL INSPECTION

An inspection of the Aircraft and the related Manuals and Technical Records will be accomplished by the Buyer, at Buyer's sole cost and expense, in accordance with the following with respect to subject Aircraft:

>   With respect to the Aircraft, Seller shall make the Aircraft available for inspection by Buyer no later than five (5) business days prior to the anticipated Delivery Date of the Aircraft. Such Inspection will not require Seller to open, or cause the opening of, any sealed panels or sealed maintenance doors of the Aircraft and may include all other visual inspections mutually agreeable by Buyer and Seller to be necessary to confirm compliance with the Delivery Conditions. Such inspection may include a composition C borescope inspection of each Engine, however Buyer shall not be entitled to perform any power assurance runs or test flights.

The purpose of the foregoing inspection shall be to determine whether the Aircraft is in the following condition:

>   As of the date of the Aircraft's retirement from Seller's revenue service, the Aircraft: (i) will have been in compliance with Seller's FAA approved maintenance program ("**Maintenance Program**"); (ii) will have been in compliance with AD's/SB's, either by terminating actions or repetitive inspections in compliance with the Maintenance Program; (iii) will have no damage history unless properly inspected or repaired in accordance with the Maintenance Program; and (iv) be clean by commercial US airline standards.

Following the inspection and the execution and delivery of the Technical Acceptance Certificate for the Aircraft by Buyer, Seller shall provide for a ferry flight of the Aircraft, at Seller's cost, to the FAR Part 145 maintenance facility in San Bernardino, California designated in writing by Buyer. Buyer, at its expense, may have up to three (3) representatives attend and participate in the ferry flight, subject to the approval of Seller's pilot for such flight.

CHICAGO/#1858696.2

[Purchase and Sale Agreement (MSN 24717)]

## SCHEDULE 6

### LIST OF MANUALS AND TECHNICAL RECORDS

[To Come]

CHICAGO/#1858696.2

**EXHIBIT B**

[Purchase and Sale Agreement]

## SCHEDULE 3

### FORM OF TECHNICAL ACCEPTANCE CERTIFICATE    *REJECT*

Global USA, LLC, (the "**Buyer**") hereby technically ~~accepts~~ *REJECT* delivery of one used (1) Boeing model 737-322 aircraft with manufacturer's serial number *24717* two used CFM International, Inc. CFM56-3C-1 engines bearing manufacturer's serial numbers *726608* and *724355*, together with all Parts installed thereon (collectively, the "**Aircraft**") in accordance with the Purchase and Sale Agreement dated as of October 15, 2008, and made between United Air Lines, Inc. (the "**Seller**") and Buyer. The undersigned representative of Buyer has been duly authorized to acknowledge and does irrevocably acknowledge on behalf of Buyer, that the Aircraft is in the technical condition required for delivery thereof for all purposes of the Purchase and Sale Agreement. ~~IS~~ *IS NOT IN CONDITION ACCEPTABLE .*

Capitalized terms not defined in this Acceptance Certificate shall have the same meaning as that given to such terms in the Purchase and Sale Agreement.

DATED This *21* Day of *NOV*, 2008.

**GLOBAL USA LLC**

By: *SALAM KAYALI*

Its: *TECH CONSULTANT .*

*REJECTED .*

CHICAGO/#1850571.4

**JS 44** (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

09-81723

FILED by ____

NOV 06 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. OF FLA. – MIAMI

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Global USA LLC, a Nevada Limited Liability Company | United Air Lines, Inc. |

**(b)** County of Residence of First Listed Plaintiff   Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Ronald T. Bevans, Jr., Esq., Law Offices of Ronald T. Bevans, Jr., P.A.
1221 Brickell Avenue, Suite 2660
Miami, Florida 33131- Telephone 305-374-7535.

Attorneys (If Known)

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☑ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☑ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☑ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

CIV-RYSKAMP

MAGISTRATE JUDGE
VITUNAC

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO     b) Related Cases ☐ YES ☑ NO

JUDGE                                    DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

LENGTH OF TRIAL via  2  days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 550,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
November 3, 2009

FOR OFFICE USE ONLY

AMOUNT $350.00   RECEIPT # 101153B

11/06/09